IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-00654-KAS

K.M.[1]

    Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION

    Defendant.
_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA**

This matter is before the Court on the **Social Security Administrative Record** [#8], filed May 10, 2023, in support of Plaintiff's Complaint [#1] seeking review of the decision of the Social Security Administration's Commissioner ("Defendant" or "Commissioner"), denying Plaintiff's claim for disability insurance benefits pursuant to Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 et seq. Plaintiff filed an Opening Brief [#9] (the "Brief"), Defendant filed a Response [#10] in opposition, and Plaintiff filed a Reply [#11]. The Court permitted Defendant to file a Surreply [#16] because Plaintiff had raised a new argument in Reply [#11]. *See Minute Order* [#15].

The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c)(3). The Court has reviewed the entire case file and the

---

[1] Pursuant to D.C.COLO.LAPR 5.2(b), "[a]n order resolving a social security appeal on the merits shall identify the plaintiff by initials only."

applicable law. For the reasons set forth below, the decision of the Commissioner is **AFFIRMED**.[2]

## I. Background

On April 14, 2020, Plaintiff protectively filed an application for disability insurance benefits under Title II, alleging disability beginning February 14, 2020. Tr. 20.[3] His claim was initially denied on November 25, 2020, and again on reconsideration on December 6, 2021. *Id.* On September 21, 2022, an Administrative Law Judge (the "ALJ") issued an unfavorable decision. Tr. 37. On January 1, 2023, the Appeals Council denied review. Tr. 1.

The ALJ first determined that Plaintiff meets the insured status requirements of the Act through December 31, 2024, and that he has not engaged in substantial gainful activity ("SGA") since February 14, 2020, the alleged onset date. Tr. 22-23. The ALJ then found that Plaintiff suffers from four severe impairments: (1) Camurati-Englemann disease; (2) hyperacusis; (3) post-concussion syndrome; and (4) disorder of the cervical spine. Tr. 23. However, the ALJ also found that Plaintiff's impairments, either separately or in combination, did not meet or medically equal "the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)." Tr. 25.

---

[2] The parties consented to proceed before the undersigned for all proceedings pursuant to 28 U.S.C. § 636(c) and D.C.COLO.LCivR 72.2. *See Consent* [#7]; *Reassignments* [#12, 13]; *Order of Reference* [#14].

[3] The Court refers to the Transcript of the Administrative Proceedings, located at Docket Nos. 8 through 8-9, by the sequential transcript numbers instead of the separate docket numbers. Also, citations to a brief's page numbers refer to the numbering used by the CM/ECF docketing system, rather than the document's original numbering.

The ALJ next concluded that Plaintiff had the residual functional capacity ("RFC") to perform "light work"[4] with the following exceptions:

> [L]ifting and/or carrying twenty pounds occasionally and ten pounds frequently; sitting six hours in an eight-hour workday; standing and/or walking four hours in an eight-hour workday; occasional climbing of ramps or stairs; never climbing ladders, ropes, or scaffolds; never balancing as part of job requirements; occasional stooping, crouching, kneeling, and crawling; never working around unprotected heights or moving and/or dangerous machinery; can tolerate moderate levels of noise; avoid bright lights, defined as lights in excess of retail or office-type lighting; and requires the use of ear plugs during work hours when not on the telephone, but the earplugs would allow for the ability to hear any types of sirens, alarms, or loud yelling for emergency situations.

Tr. 26. Based on the RFC and the testimony of an impartial vocational expert ("VE"), the ALJ found that Plaintiff could perform his past relevant work as a technical support representative and as a data entry clerk. Tr. 34.

The ALJ also made "alternative findings for step five of the sequential evaluation process prior to the claimant's attainment of age 55." Tr. 35. He found that Plaintiff was "an individual closely approaching advanced age on the alleged disability onset date" and that he had "at least a high school education." *Id.* The ALJ noted that transferability of job skills was immaterial to his disability determination because, under the Medical-Vocational Rules, a finding of not disabled was supported regardless of whether Plaintiff had transferable job skills. *Id.* Finally, the ALJ found that, considering Plaintiff's age, education, work experience, and RFC, and given the VE's testimony, there were a

---

[4] "Light work" is defined as follows: "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [one] must have the ability to do substantially all of these activities. If someone can do light work, [the agency] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

significant number of jobs in the national economy which Plaintiff could have performed, including the representative occupations of "office helper," "marker," and "cashier II." Tr. 36. The ALJ therefore found that Plaintiff was not disabled at step four and alternately found that Plaintiff was not disabled at step five. Tr. 34-37.

The ALJ's decision is the Commissioner's final decision for purposes of judicial review. 20 C.F.R. § 404.981 (explaining that the ALJ's decision becomes the final decision when the Appeals Council denies a request for review). The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II. Standard of Review and Applicable Law

Pursuant to the Act:

> [T]he Social Security Administration (SSA) is authorized to pay disability insurance benefits and Supplemental Security Income to persons who have a "disability." A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."

*Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003) (quoting 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B)). Under the applicable legal standard, a claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). The existence of a qualifying disabling impairment must be demonstrated by "medically acceptable clinical and laboratory diagnostic" findings. 42 U.S.C. §§ 423(d)(3), 423(d)(5)(A).

4

"When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effect of the impairments in making a disability determination." *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987). However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Act; rather, to be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months. *See, e.g.*, *Kelley v. Chater,* 62 F.3d 335, 338 (10th Cir. 1995) (citing 42 U.S.C. § 423(d)(1)(A)).

The Court reviews the Commissioner's final decision by examining the administrative record and determining "whether the [ALJ's] factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). However, the Court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Casias v. Sec. of Health & Hum. Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). In other words, the Court does not reexamine the issues de novo. *Sisco v. U.S. Dep't of Health & Hum. Servs.*, 10 F.3d 739, 741 (10th Cir. 1993). Thus, even when some evidence could support contrary findings, the Court "may not displace the agency's choice between two fairly conflicting views," even if the Court may have "made a different choice had the matter been before it de novo." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (internal citation, quotation marks, and modification omitted).

A.  **The Five-Step Framework**

The Social Security Administration uses a five-step framework to determine whether a claimant meets the necessary conditions to receive Social Security benefits.

*See* 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at steps one through four, and if the claimant fails at any of these steps, consideration of any subsequent step or steps is unnecessary. *Williams v. Bowen*, 844 F.2d 748, 750, 751 (10th Cir. 1988) ("If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."). The Commissioner bears the burden of proof at step five. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

Step one requires the ALJ to determine whether the claimant is "presently engaged in substantial gainful activity." *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004). If not, the ALJ considers at step two whether the claimant has "a medically severe impairment or impairments." *Id.* "An impairment is severe under the applicable regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citing 20 C.F.R. § 404.1521). Next, at step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition "listed in the appendix of the relevant disability regulation," *i.e.*, the "Listings." *Allen*, 357 F.3d at 1142. At step four, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(e). RFC is defined as "the most [the claimant] can still do despite [their] limitations" and it considers the claimant's "ability to meet the physical, mental, sensory, and other requirements of work." 20 C.F.R. § 404.1545(a)(1), (a)(4). In making an RFC determination, the ALJ must consider all the claimant's impairments, including impairments that are not severe. 20 C.F.R. § 404.1545(a)(2). Also, "the ALJ must consider, at step four, whether a claimant's impairments prevent [him or her] from

6

performing [his or her] past relevant work." *Wall*, 561 F.3d at 1052. "Even if a claimant is so impaired, the agency considers, at step five, whether [he or she] possesses the sufficient [RFC] to perform other work in the national economy." *Id.*

### B.   Substantial Evidence

An ALJ must consider all evidence and explain why he or she finds a claimant not disabled. *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). However, the ALJ need not specifically "reference everything in the administrative record." *Wilson*, 602 F.3d at 1148. Rather, "we review the Secretary's decision only to determine whether her factual findings are supported by substantial evidence and whether she applied the correct legal standards." *Clifton*, 79 F.3d at 1009 (citing 42 U.S.C. § 405(g) and *Byron v. Heckler*, 742 F.2d 1232, 1234-35 (10th Cir. 1984)). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Wilson*, 602 F.3d at 1140 (internal quotation marks and citation omitted). "It requires more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084. A decision by the ALJ is not based on substantial evidence "if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). In other words, the Court's determination of whether the ALJ has supported his or her ruling with substantial evidence "must be based upon the record taken as a whole." *Broadbent v. Harris*, 698 F.2d 407, 412, 414 (10th Cir. 1983). However, the "'failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal" separate from a lack of substantial evidence." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal citation omitted); *accord Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### III. Analysis

**A.     Plaintiff's Noise Tolerance**

Plaintiff raises just one argument on appeal: that "the Commissioner erred as a matter of law by rejecting all medical opinions related to the Plaintiff's rare and serious hearing condition (hyperacusis) and by formulating an RFC that was based upon the ALJ's lay opinion and which was not build upon [sic] an adequate logic bridge." *Brief* [#9] at 9. Specifically, Plaintiff argues that the ALJ erred by rejecting every medical opinion in the record and fashioning an RFC based on his own lay interpretation of Plaintiff's hyperacusis. *Id.* at 10, 13 (asserting that the ALJ's RFC "was a significant variation from all of those [medical] opinions"). Defendant responds that the record contained various opinions about Plaintiff's noise tolerance and that the ALJ "reasonably reconciled conflicting evidence." *Response* [#10] at 1-2.

In relevant part, the ALJ's assessed RFC limits Plaintiff to "moderate levels of noise" and "requires the use of ear plugs during work hours when not on the telephone, but the earplugs would allow for the ability to hear any types of sirens, alarms, or loud yelling for emergency situations." Tr. 26.

Plaintiff is correct to the extent that an ALJ may not render medical opinions. *See, e.g.*, *Fulton v. Berryhill*, No. CIV-16-300-SPS, 2017 WL 4233285, at *4 (E.D. Okla. Sept. 25, 2017) (stating that the ALJ was not qualified to determine what medical treatment "would be expected if the claimant were truly disabled"); *Masse v. Astrue*, No. 09-cv-02079-REB, 2010 WL 3853318, at *4 (D. Colo. Sept. 28, 2010) (stating that the ALJ was not qualified to determine whether "synovitis" is equivalent to minimal inflammation).

8

However, that does not mean that the ALJ's RFC must directly adopt any single medical opinion found in the record. *See, e.g.*, *Colby V.W. v. Kijakazi*, Case No. 2:21-cv-00622-JCB, 2022 WL 2953909, at *3-*4 (D. Utah July 26, 2022); *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) (rejecting the argument "that the components of an RFC assessment lack substantial evidentiary support unless they line up with an expert medical opinion"). Thus, insofar as Plaintiff argues that the ALJ "was not free to reject all medical opinions and then, independently, formulate an RFC that was a significant variation from all of those opinions," the Tenth Circuit has rejected that argument. *Brief* [#9] at 13; *see McDonald v. Astrue*, 492 F. App'x 875, 885-886 (10th Cir. 2012) (rejecting the argument that "an ALJ is not capable of determining, without a corresponding medical opinion, a person's mental capacity to perform in a fulltime work setting" and that "[b]y doing so . . . the ALJ improperly substituted his own lay opinion for that of the medical experts"). This is because "the ALJ's RFC assessment is an administrative, rather than a medical, determination." *McDonald*, 492 F. App'x at 885 (citing Soc. Sec. Ruling 96-5p, 1996 WL 374183, at *5 (July 2, 1996)). Moreover, the ALJ is the "trier of fact", responsible for weighing conflicting evidence. *See, e.g.*, *Casias v. Sec'y of Health & Hum. Servs.*, 933 F.2d 799, 801 (10th Cir. 1991); *AKC v. Kijakazi*, Case No. 23-1045-JWB, 2023 WL 7495942, at *5 (D. Kan. Nov. 13, 2023)..

Here, even Plaintiff acknowledges a record full of conflicting limitations. *Brief* [#9] at 13-14 (citing opinions including the following restrictions: "avoid even moderate exposure to noise"; "do no work around excessive noise"; "require[s] a quiet, more isolated work setting or work from home"; hyperacusis "would affect [Plaintiff's] ability to function in settings with any noise"; "even ordinary sounds could cause discomfort") (citing

Tr. 113, 125, 127, 134, 572, 585, 355). However, this characterization omits other record evidence the ALJ considered, i.e., that Plaintiff's custom earplugs greatly improved his hyperacusis. Tr. 30, 31, 33-34. A December 23, 2019 record indicated that Plaintiff's earplugs "help decrease the volume of the sounds around him" and that he should "wear hearing protection whenever in noisy situations" and "for best fit, consider custom hearing protection." Tr. 355. In a March 16, 2020 visit, Plaintiff "discussed in great length how his prescribed ear plugs have helped with noise that hurts him" by "reduc[ing] the volume of the noise around him to either 60 or 80 percent, based on the filter he chooses" and that "he was able to go out to dinner with his cousin and he could go to the store without the loud noises affecting him like they have done before." Tr. 525. On March 17, 2020, he reported "getting the noise canceling ear plugs with great benefit" and "'brain fog' is less." Tr. 529.

Here, Plaintiff does not identify any medical opinion the ALJ did not at least discuss. *See generally Brief* [#9]. Instead, his argument is that the ALJ failed to "build an accurate and logical bridge between the evidence and [his] determination." *Reply* [#11] at 2 (citing *Bradley v. Berryhill*, No. 17-cv-02658-STV, 2018 WL 6168066, at *10 (D. Colo. Nov. 26, 2018)). However, the ALJ's logical bridge is quite apparent to the Court. The ALJ discussed the record evidence relevant to Plaintiff's hyperacusis, at length, and observed "significant improvement with noise canceling earplugs." Tr. 27-30, 31. Because of Plaintiff's hyperacusis and headaches, the ALJ concluded that Plaintiff "can tolerate only moderate levels of noise" and "requires the use of ear plugs during work hours when not on the telephone, but the earplugs would allow for the ability to hear any types of sirens, alarms, or loud yelling for emergency situations." Tr. 31. This exactly matches the ALJ's

10

RFC assessment. Tr. 26. The ALJ did not illogically impose a moderate noise limitation with the additional protection of earplugs; the ALJ based his conclusion on medical records indicating that a noise limitation is needed and that earplugs significantly helped. This is not a case where the Commissioner is post hoc justifying the ALJ's decision—the ALJ's rationale is spelled out in the decision itself. *Cf. Robinson v. Barnhart*, 366 F.3d 1078, 1084-85 (10th Cir. 2004) (rejecting lower court's "post hoc efforts to salvage the ALJ's decision"). Accordingly, the Court finds that the ALJ's RFC determination is supported by substantial evidence.

**B.     Interaction with Coworkers**

Finally, in his Reply [#11], Plaintiff raised an alternate argument: assuming "Plaintiff could, *arguendo*, tolerate moderate noise with earplugs that only filtered through emergencies, the interaction with co-workers and supervisors would be limited." *Reply* [#11] at 3. He argued that "[l]imiting interaction with supervisors and co-workers as well as the public erodes the jobs base. Therein lies the harm." *Id.*[5]

Defendant argues in Surreply [#16] that the ALJ's RFC did not require Plaintiff to wear earplugs that *only* allow the ability to hear emergencies, and that records note Plaintiff purchased vented earplugs which better allow normal communication with colleagues. *Surreply* [#16] at 3 (citing Tr. 355). Additionally, Defendant argues that the ALJ presented the VE a hypothetical which included the use of earplugs, and the VE

---

[5] The Court notes that arguments raised for the first time in a reply brief are waived. *Staheli v. Comm'r, SSA*, 84 F.4th 901, 908 n.4 (10th Cir. 2023) ("This argument is waived because [the plaintiff] raises it for the first time in [her] reply brief.") (citing *Mays v. Colvin*, 739 F.3d 569, 576 n.3 (10th Cir. 2014)). However, the Court may choose to consider an argument even if it was raised in reply. *Id.* (stating that the claimant had waived her argument but "in any event, the argument lacks merit"). In the interest of fairness and thorough review, Defendant was permitted to file a surreply responding to this argument, and the Court chooses to consider it. *Minute Order* [#15].

testified that Plaintiff could perform several occupations with this limitation, providing substantial evidence in support of the ALJ's decision. *Id.* at 4. Finally, Defendant challenges Plaintiff's claim that social interaction was important for each occupation the VE identified. *Id.* at 5. The Court addresses these arguments in turn.

To the extent that Defendant disputes the level of limitations earplugs would present, the Court declines to take judicial notice of his cited commercial website discussing vented earplugs—especially when there is no indication that the ALJ even considered the kind of earplugs Plaintiff used. *U.S. v. Estep*, 760 F.2d 1060, 1063 (10th Cir. 1985) (holding that because judicial notice removes a party's evidentiary burden, "the doctrine demands that a court only notice 'matters that are verifiable with certainty'") (quoting *St. Louis Baptist Temple v. F.D.I.C.*, 605 F.2d 1169, 1172 (10th Cir. 1979)); *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) ("[T]he court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself.") (collecting cases); *see generally* Tr. 20-37 (ALJ noting only that Plaintiff's earplugs are "custom fit" and "prescribed"). The Court will not infer any factual findings about the kind of earplugs Plaintiff uses.

As for Defendant's next argument, the Court agrees with the general principle that where "the ALJ propound[s] a hypothetical question to the VE that included all the limitations the ALJ ultimately included in his RFC assessment", "the VE's answer to that question provide[s] a proper basis for the ALJ's disability decision." *Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000) (citing *Gay v. Sullivan*, 986 F.2d 1336, 1341 (10th Cir. 1993)). However, that statement of law necessarily requires that the RFC was correctly determined. *See, e.g., Haga*, 482 F.3d at 1207, 1208-09 (reversing and remanding the

ALJ's step-five finding of no disability because the ALJ failed to adequately support his RFC determination).

The Court reads Plaintiff's argument as challenging the lack of social interaction limitations in both the hypothetical and the RFC determination. *Reply* [#11] at 3 (noting that "job-required social interaction [is] an importance [sic] for each DOT [Dictionary of Occupational Titles] code provided" and arguing that "limiting interaction with supervisors and co-workers as well as the public erodes the jobs base"). The ALJ's RFC determination did not reference social limitations, so his hypotheticals to the VE did not incorporate any limitations. Tr. 26, 86-91. The Court agrees with Plaintiff that limitations in social interaction would be expected if Plaintiff must wear earplugs at work all day, and that such limitations could plausibly erode the jobs base. *Reply* [#11] at 3. To the extent the ALJ failed to include, or at least discuss, social interaction limitations, the Court finds error. *See, e.g.*, *Balderes v. Astrue*, No. 08-1378-WEB, 2009 WL 3764126, at *5 (D. Kan. Nov. 10, 2009) (finding error based on the ALJ's unexplained failure to include all limitations in his RFC findings).[6]

**C.   Harmless Error**

Although the ALJ erred by failing to include, or at least consider, social limitations in his assessed RFC and VE hypothetical, the Court finds that this is one of those rare circumstances where it is "appropriate to supply a missing dispositive finding under the rubric of harmless error" because "based on material the ALJ did at least consider (just

---

[6] In *Balderes*, the court found reversible error because "the court cannot determine, in the first instance, the impact of all four moderate limitations on [the ALJ's] step five determination[.]" *Balderes*, 2009 WL 3764126, at *5. This is normally the correct outcome, but here, for reasons discussed below, DOT occupational descriptions allow the Court to determine the exact impact of Plaintiff's asserted social limitations on the ALJ's step four and step five analysis, so the error is harmless and reversal is not necessary.

not properly), [the Court can] confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004).

Defendant argues in his Sureply [#16] that Dictionary of Occupational Titles ("DOT") occupation descriptions expressly consider social interaction factors, and that Plaintiff's past relevant work, as well as two of the VE's proposed occupations, would accommodate even significant limitations on social interaction. *Surreply* [#16] at 5. The SSA relies heavily on the DOT descriptions, to the point that "an ALJ must inquire about and resolve any conflicts between a [VE]'s testimony regarding a job and the description of that job in the [DOT]." *Poppa v. Astrue*, 569 F.3d 1167, 1173 (10th Cir. 2009) (citing Soc. Sec. Ruling 00-4p, 2000 WL 1898704, at *4 (Dec. 4, 2000)); *Holcom v. Barnhart*, 79 F. App'x 397, 399 (10th Cir. 2003) (discussing the ALJ's "obligation to obtain a reasonable explanation for any variance between the VE's testimony and the DOT job descriptions").

Because the ALJ must either ensure that VE testimony corresponds to the DOT or explain any variance, the Court finds DOT classifications authoritative. *Poppa*, 569 F.3d at 1173; *Holcom*, 79 F. App'x at 399; *Beloborodyy v. Colvin*, No. 11-cv-00797-PAB, 2013 WL 5366860, at *2 (D. Colo. Sept. 25, 2013) (stating that "an ALJ will take judicial notice of the information listed in Dictionary of Occupational Titles"). To the extent that DOT descriptions address Plaintiff's concerns about social interaction eroding the job base, reversal is unnecessary because, on remand, the ALJ and the VE would have to refer to the exact same publication and, in the case of Plaintiff's past work, *the exact same descriptions*. *Reply* [#11] at 3. Therefore, if the current RFC, with added social limitations, can accommodate either Plaintiff's past work or the VE's proposed occupations, then the

14

ALJ's error in formulating the current RFC is harmless because Plaintiff is still capable of performing those jobs under a corrected RFC. *See Allen*, 357 F.3d at 1145.

Here, the ALJ found that Plaintiff could perform past relevant work as a "technical support representative", DOT code 032.262-010, and as a "data entry clerk", DOT code 203.582-054. Tr. 34. The VE testified that Plaintiff also could perform work as an "office helper", DOT code 239.567-010; "marker", DOT code 209.587-034; and "cashier II", DOT code 211.462-010. Tr. 36.

In each description, "[t]he DOT rates the amount of interaction with people on a scale of 0-8, with 8 representing the lowest possible level of human interaction that exists in the labor force." *Lane v. Colvin*, 643 F. App'x 766, 770 n.1 (10th Cir. 2016). A rating of 8 indicates "the need to take instructions as only '[a]ttending to the work assignment instructions or orders of supervisor' with '[n]o immediate response required unless clarification of instructions or orders is needed.'" *Id.* (quoting DOT, App. B—Explanation of Data, People, & Things, 1991 WL 688701 (4th ed. 1991)). Here, the Court notes the descriptions for Plaintiff's past relevant work as well as the VE's proposed occupations:

- The DOT description for "technical support representative", notes "People: 6 – Speaking-Signalling, S – Significant". *See* DOT § 032.262-010, 1991 WL 646554 (4th ed. 1991) (user support analyst).

- The description for "data entry clerk" notes "People: 8 – Taking Instructions-Helping, N – Not Significant". DOT § 203.582-054, 1991 WL 671700 (4th ed. 1991) (data entry clerk).

- The description for "office helper" notes "People: 6 – Speaking-Signalling, N – Not Significant". DOT § 239.567-010, 1991 WL 672232 (4th ed. 1991) (office helper).

- The description for "marker" notes "People: 8 – Taking Instructions-Helping, N – Not Significant". DOT § 209.587-034, 1991 WL 671802 (4th ed. 1991) (marker).

- The description for "cashier II" notes "People: 6 – Speaking-Signalling, S – Significant." See DOT § 211.462-010, 1991 WL 671840 (4th ed. 1991) (cashier II)

Even assuming that Plaintiff's use of earplugs required the AFC to consider and assess significant social limitations, Plaintiff still would be capable of performing his past work as a "data entry clerk" or the VE's proposed occupation of "marker". Both occupations have a human interaction score of 8, "representing the lowest possible level of human interaction that exists in the labor force." *Lane*, 643 F. App'x at 770 n.1. Plaintiff does not argue that he is unable to attend to a supervisor's work assignment instructions or orders, which is all that a human interaction score of 8 requires. *Id.*; *see generally Reply* [#11] at 3. Thus, Plaintiff would still be found not disabled at step four and at step five.[7]

Based on the DOT descriptions, which the ALJ and VE would be required to consider on remand, the Court can "confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Allen*, 357 F.3d at 1145. Therefore, the Court finds that the ALJ's failure to

---

[7] The Court notes that, even if one or two of the VE's proposed jobs are incompatible with the claimant's corrected RFC, the Tenth Circuit regularly finds harmless error where the remaining proposed job or jobs still exist in significant numbers in the regional or national economy. *See, e.g.*, *Stokes v. Astrue*, 274 F. App'x 675, 684 (10th Cir. 2008); *Chrismon v. Colvin*, 531 F. App'x 893, 900 (10th Cir. 2013). Here, for example, the VE testified that the 65,000 marker jobs were available nationally and 4,000 were available in Colorado. Tr. 36. This number meets the threshold. Both the Tenth Circuit and District Courts have repeatedly held or indirectly indicated that numbers smaller than 65,000 in the national economy meet the "significant numbers" threshold. *See, e.g.*, *Lynn v. Colvin*, 637 F. App'x 495, 499 (10th Cir. 2016) (24,900 jobs in the national economy); *Rogers v. Astrue*, 312 F. App'x 138, 140, 142 (10th Cir. 2009) (11,000 in the national economy); *Calvin v. Kijakazi*, No. CIV-21-1046-SM, 2022 WL 3268745, at *4 (W.D. Okla. Aug. 10, 2022) (27,000 jobs in the national economy); *Harrison v. Saul*, No. 19-1202-KHV, 2020 WL 1847735, at *6 (D. Kan. Apr. 13, 2020) (45,000 jobs in the national economy); *Jackson v. Colvin*, No. 13-cv-01927-KLM, 2014 WL 5504755, at *9 (D. Colo. Oct. 31, 2014) (collecting cases to hold that 26,000 jobs in the national economy met the threshold).

include social limitations in the RFC and in his hypothetical to the VE was harmless error. Accordingly, the ALJ's decision in this matter is free of reversible legal error.

## IV. Conclusion

Based on the foregoing,

IT IS HEREBY **ORDERED** that the Commissioner's decision in this case is **AFFIRMED**.

IT IS FURTHER **ORDERED** that each party shall bear its own costs and attorney's fees.

IT IS FURTHER **ORDERED** that the Clerk of Court shall **enter** judgment in favor of Defendant and **close** this case.

Dated: March 31, 2024                    BY THE COURT:

Kathryn A. Starnella
United States Magistrate Judge